**Karen Lee WOODSON, Appellant,**

v.

**AMF LEISURELAND CENTERS, INC.**

**No. 87–1437.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 15, 1987.

Decided March 22, 1988.

Steven E. Wolfe (argued), Holland, Pa., for appellant.

Jeffrey A. Smith (argued), Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for appellee.

Before SLOVITER and COWEN, Circuit Judges, and DEBEVOISE, District Judge.[*]

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

On this appeal by Karen Lee Woodson from the district court's order denying her motion for a new trial, we are obliged to predict whether the Pennsylvania Supreme Court would allow an award of punitive damages in a wrongful discharge action. If so, we must then determine whether, under Pennsylvania's standard for punitive damages, Woodson introduced sufficient evidence to permit the punitive damages issue to go to the jury.

### I.

### *Facts and Procedural History*

Woodson was employed by AMF Leisureland Centers, Inc. as a barmaid in the Van-Winkle Lounge in Bristol, Pennsylvania. The lounge is part of a combination bowling and liquor facility; patrons can drink while they bowl and can also drink in the lounge, which is adjacent to the bowling alley.

The evidence at trial, viewed in the light most favorable to Woodson who won the verdict on liability, was that on the evening of November 21, 1985, Billy Naylor entered the lounge from the bowling area and asked Woodson to serve him beer. Naylor had frequented the lounge on previous occasions; on several occasions he had become intoxicated, abusive, and violent towards Woodson and others. Woodson believed Naylor was intoxicated on the evening of November 21, 1985, and refused to serve him any alcoholic beverage.

Naylor complained to the manager, Anthony LaPolla, who was Woodson's immediate supervisor. LaPolla ordered Woodson

* Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation.

to serve Naylor, stating, "Just give him one more so he doesn't create a scene." App. at 42. Woodson refused, stating, "Tony, he is drunk. No, he is drunk. It is against the law to serve somebody a beer that is drunk." App. at 82. LaPolla again demanded that Woodson serve Naylor, stating, "If you refuse to serve this guy grab your coat and leave; get out of here" and "You don't serve him, you're done." App. at 108, 82. Accordingly, Woodson left the establishment.

Woodson filed suit against AMF in federal court on the basis of diversity jurisdiction. She alleged wrongful discharge and sought compensatory damages for lost wages and pain and suffering, as well as punitive damages for what she alleged was defendant's outrageous conduct in firing her under these circumstances. The case was tried before a jury. At the close of all the evidence, AMF made a motion for a directed verdict on the punitive damages claim, which the court granted. The court then instructed the jury that, "[a]s a matter of law ... there are no punitive damages to be found in this case," App. at 294, and withdrew from its consideration evidence of AMF's financial net worth, which had been stipulated to by the parties.

The jury, by special interrogatories, found that Woodson had been fired by LaPolla and that she had reasonably believed that Naylor was intoxicated. It returned a verdict for Woodson in the amount of $1,000, representing the stipulated figure for Woodson's lost wages.

Woodson filed a motion for a new trial on the issue of punitive damages. In its opinion accompanying the order denying the motion, the district court ruled as a legal matter that awarding punitive damages in wrongful discharge cases "involves a not insignificant expansion in the parameters of the wrongful discharge tort." App. at 326. The court viewed the award of punitive damages for wrongful discharge as "add[ing] a new and unprecedented depth to this persistently circumscribed tort," App. at 327, and declined to permit such expansion until the Pennsylvania courts had done so in the first instance.

In addition, the court determined in light of the evidence submitted that Woodson was not entitled to punitive damages. The court explained, "[i]n the case of a wrongful discharge ... the employee [must] prove more than just the wrongful nature of the termination to be entitled to a punitive damage award.... The plaintiff here introduced no such additional evidence." App. at 328.

Woodson appeals from the order denying her motion for a new trial. The issue whether punitive damages are cognizable under Pennsylvania law in a wrongful discharge action is a legal one, as to which our review is plenary. Because the issue of the sufficiency of the evidence to present a jury issue on punitive damages is also a legal one, we have plenary review over that issue as well.

## II.

*Punitive Damages in Wrongful Discharge Cases*

A cause of action for wrongful discharge was first recognized by the Pennsylvania Supreme Court in *Geary v. United States Steel Corp.*, 456 Pa. 171, 184, 319 A.2d 174, 180 (1974), where the court stated that a "discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened." Post–*Geary* decisions in Pennsylvania courts and in federal courts applying Pennsylvania law have confirmed that Pennsylvania, while retaining the employment-at-will doctrine, recognizes an exception for discharges that violate public policy. Such a wrongful discharge action is one that sounds in tort, not contract, *see Darlington v. General Electric*, 350 Pa.Super. 183, 207, 504 A.2d 306, 318 (1986), and may be maintained "only when important and well recognized facets of public policy [are] at stake." *Id.* at 208, 504 A.2d at 318 (quoting *Rettinger v. American Can Co.*, 574 F.Supp. 306, 311 (M.D.Pa.1983)).

The public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with or refusal

to violate the law. *See, e.g., Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir.1979) (cause of action for wrongful discharge for refusal to submit to a polygraph test when statute forbid such testing); *Shaw v. Russell Trucking Line, Inc.,* 542 F.Supp. 776 (W.D.Pa.1982) (for reporting motor vehicle violations); *McNulty v. Borden,* 474 F.Supp. 1111 (E.D.Pa.1979) (for refusing to violate antitrust laws); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (for serving on jury duty); *cf. Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (3d Cir.1983) (for exercising First Amendment rights). *See generally* Mallor, *Punitive Damages for Wrongful Discharge of At Will Employees,* 26 Wm. & Mary L.Rev. 449, 462 (1985) ("Exemplifying the extreme on the continuum in which judicial intervention is most likely to occur are the cases in which employees are discharged for refusing to commit an illegal act.").

▆ The Pennsylvania Liquor Code proscribes serving alcohol to an intoxicated person:

> It shall be unlawful ... for any licensee ... or any employee, servant or agent of such licensee ... to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated ... or to habitual drunkards, or persons of known intemperate habits.

Pa.Stat.Ann. tit. 47, § 4–493(1) (Purdon 1969); *see also* Liquor Code, Act No. 1987–14, 1987 Pa.Legis.Serv. 493(1). The jury's finding that Woodson was fired as a result of her refusal to serve liquor to a visibly intoxicated person thus established a sufficient predicate for the tort of wrongful discharge. Significantly, AMF has not cross-appealed from the finding that it wrongfully discharged Woodson and that fact is thus established for purposes of this appeal.

▆ In striking Woodson's claim for punitive damages, the district court in this case reasoned that, "[t]he courts of the Commonwealth, which adopted the at-will rule in the first instance and which have cautiously guarded the public policy exception's evolution, are the forums more appropriately assigned the task of defining the parameters of this common law tort." App. at 329. We believe that the district court's reluctance to decide whether Pennsylvania would permit a jury which found that a defendant committed the tort of wrongful discharge to award punitive damages was an impermissible abdication of the responsibility of a federal court sitting in diversity. When the state courts have not spoken, the federal court must predict how the state's Supreme Court would rule when faced with that issue. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Unless Congress decides that we no longer have a function to perform in diversity cases, we cannot decline to make the required prediction. For example, in *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1277 (3d Cir.1979) (in banc), we stated that although Pennsylvania courts had not yet considered whether punitive damages could be recovered for tortious infliction of emotional distress, it was "our task to anticipate how the Pennsylvania Supreme Court would rule on this matter."

The situation before us is analogous. Although apparently no Pennsylvania court has awarded punitive damages in a wrongful discharge case, it is also true that no Pennsylvania court has refused to do so. It appears that the issue simply has not arisen. This is therefore not the same as the situation we faced in *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982), on which the district court relied. There, in deciding the parameters of the tort of wrongful discharge without guidance from the Pennsylvania Supreme Court, we predicted that Pennsylvania would not extend the tort to cases where there was a statutory remedy. Subsequently, that proved to be the case. *See Darlington v. General Electric Co.,* 350 Pa.Super. at 208, 504 A.2d at 318. Here, we need not decide if Pennsylvania would extend the tort, but merely whether it would limit the remedy for the acknowledged tort by precluding punitive damages.

Pennsylvania has adopted the position of the Restatement of Torts on punitive damages, *see Chambers v. Montgomery*, 411 Pa. 339, 344, 192 A.2d 355, 358 (1963), which authorizes punitive damages to deter the defendant and others in similar situations from similar conduct in the future.[1] Nothing in the Pennsylvania cases suggests that the Pennsylvania Supreme Court would not join the numerous courts in other jurisdictions that have awarded punitive damages in wrongful discharge cases, once it has been established that wrongful discharge is a tort, rather than a breach of contract. *See, e.g., Cancellier v. Federated Dep't Stores*, 672 F.2d 1312 (9th Cir.) (employer's unfair dealing in termination process), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 610 P.2d 1330, 164 Cal.Rptr. 839 (1980) (employee fired for refusing to participate in illegal price-fixing scheme); *Gates v. Life of Montana Ins. Co.*, 205 Mont. 304, 668 P.2d 213 (1983) (deceptive conduct in termination process); *Lally v. Copygraphics*, 173 N.J.Super. 162, 413 A.2d 960 (1980) (employee terminated for seeking workers' compensation benefits), *aff'd*, 85 N.J. 668, 428 A.2d 1317 (1981); *cf. Abraham v. Pekarski*, 728 F.2d 167, 173 (3d Cir.) (punitive damages appropriate due to defendants' ill will and oppressive behavior in depriving employee of property interest without due process of law by firing him for political reasons), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984). *See generally* Mallor, *supra*, at 479–95.

Because Pennsylvania both recognizes the tort of wrongful discharge and permits recovery of punitive damages in appropriate tort cases, a federal court's award of punitive damages for wrongful discharge does not constitute an unwarranted extension of state law. Instead it is, as appel-

lant argues, "the logical application of an established remedy to an existing wrong." Appellant's Brief at 23. *Cf. Elbeshbeshy v. Franklin Institute*, 618 F.Supp. 170, 172 (E.D.Pa.1985) ("the court is not convinced, at this time, that the Pennsylvania Supreme Court would not, in the right circumstances, allow recovery of punitive damages for wrongful discharge."). We conclude that the district court erred as a matter of law to the extent that its rulings were predicated on the belief that Pennsylvania would not allow punitive damages to be recovered in a wrongful discharge case.

### III.

*Sufficiency of Evidence to Support Punitive Damages*

■ AMF argues that its conduct was insufficiently outrageous to support punitive damages. Under Pennsylvania law the trial judge must determine whether the plaintiff has presented sufficient evidence to support a punitive damages claim, *see Martin v. Johns–Manville Corp.*, 508 Pa. 154, 173, 494 A.2d 1088, 1098 (1985) (opinion announcing the judgment of the court). Our review of the district court's refusal to submit an issue to the jury is plenary. *See Abraham v. Pekarski*, 728 F.2d at 173; *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132, 144–47 (3d Cir.1973). We must determine "whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir. 1969).

The Pennsylvania Supreme Court has held that punitive damages may be awarded for "acts done with a bad motive or with a reckless indifference to the interests of others." *Chambers v. Montgomery*, 411 Pa. at 344, 192 A.2d at 358 (quoting Re-

---

1. Section 908 of the current Restatement provides:

    (1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future. (2) Punitive damages may be awarded for conduct that is outrageous, because of the

    defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant. Restatement (Second) of Torts § 908 (1979).

statement of Torts § 908(1) comment b (1939)). Thus, for example, Pennsylvania law permits recovery of punitive damages for intentional interference with prospective business advantage, *Richette v. Pennsylvania Railroad*, 410 Pa. 6, 14, 187 A.2d 910, 914–15 (1963), and for intentional infliction of emotional distress, *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa. Super. 375, 383–84, 492 A.2d 1382, 1387 (1985). This court also has held that under Pennsylvania law, "the jury should have been allowed to decide whether the warnings issued by defendants were so inadequate as to constitute a reckless disregard of the danger to the public of irreversible retinal damage." *Hoffman*, 485 F.2d at 146. Surely, in light of this authority, AMF's insistence that its employee serve alcoholic beverages to an intoxicated patron could be viewed by a reasonable jury as evincing such reckless disregard of the dangerous consequences to the public to warrant punitive damages.

Arguably, every discharge of an employee for refusing to violate a statutory prohibition is so contrary to public policy that, if proved, it would entitle the employee to punitive damages. We need not decide that issue here because we believe that the Pennsylvania Supreme Court would conclude that the policy to safeguard the lives of innocent motorists and pedestrians which underlies the Pennsylvania legislature's decision to enact the statute prohibiting service of alcoholic beverages to visibly intoxicated persons is the type of strong public policy that should be reinforced by punitive damages. In fact, the Pennsylvania legislature has recently increased the penalty for violation of that statute. *See* Liquor Code, Act No. 1987–14, 1987 Pa. Legis.Serv. 494.

We find guidance also from the Pennsylvania Superior Court, which, in holding that evidence of driving under the influence of intoxicating liquors may constitute a sufficient ground for allowing punitive damages, commented: "Automobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the possibility of death and serious injury increases substantially." *Focht v. Rabada*, 217 Pa.Super. 35, 41, 268 A.2d 157, 161 (1970).

The district court based its decision not to allow the punitive damages claim on the ground that Woodson "relied solely on the concededly improper nature of the discharge to support her claim for punitive damages." App. at 328. The court believed that the employee must "prove more than just the wrongful nature of the termination to be entitled to a punitive damage award." *Id.*

This court has already rejected that approach. In *Chuy v. Philadelphia Eagles Football Club*, as here, there was no further evidence of outrageous conduct than the commission of the underlying tort, and liability for the underlying tort itself was predicated on some degree of culpability. Nonetheless, Judge Rosenn, writing for the in banc court, explained:

> We see no inconsistency in awarding punitive damages by the same legal standard used in determining liability for compensatory damages. The purposes of the two forms of damages are quite distinct under Pennsylvania law. . . . This being so, predicating compensatory damages upon a finding of outrageous conduct does not preclude a separate assessment of punitive damages to punish past and deter future tortious conduct.

595 F.2d at 1277. *Cf. Franklin Music Co. v. American Broadcasting Companies*, 616 F.2d 528, 542 (3d Cir.1979) (conduct more serious than interference with contractual relationships is required for punitive damages, distinguishing cases "where the substantive tort itself requires proof of extreme or outrageous conduct intentionally or recklessly engaged in.").

AMF argues that the evidence failed to show that it engaged in a pattern of outrageous conduct. Nonetheless, a jury could reasonably conclude that AMF's insistence that its employee serve alcohol to a visibly intoxicated patron warrants punitive damages "to the end that [defendant], as well as all other persons and entities, should become aware that it is contrary to

law." *Richette v. Pennsylvania Railroad,* 410 Pa. at 14, 187 A.2d at 915.

## IV.

### *Conclusion*

For the reasons set forth, we will reverse the district court's order denying plaintiff's motion for a new trial and remand with directions to grant a new trial on the issue of punitive damages.