Lawrence D. DUGAN and Kimberly L. Dugan, his wife, Plaintiffs,

v.

BELL TELEPHONE OF PENNSYLVANIA, a corporation; Bell Atlantic, a corporation; and Frank Hoffman, individually and as agent for Bell Atlantic, Defendants.

Civ. A. No. 94–73.

United States District Court, W.D. Pennsylvania.

Sept. 27, 1994.

---

Helen R. Kotler, Pittsburgh, PA, for Lawrence D. Dugan, Kimberly L. Dugan.

Martha Hartle Munsch, Mark S. Melodia, William C. Nowak, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for Bell Telephone of Pennsylvania, Bell Atlantic.

Martha Hartle Munsch, William C. Nowak, Reed, Smith, Shaw & McClay, for Frank Hoffman.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the Court is defendants' Rule 12(b) motion to dismiss plaintiffs' amended complaint. For the reasons set forth below, the Court will grant defendants' motion in part and deny it in part.

### I. Background

Plaintiffs, Lawrence Dugan (Dugan) and his wife, filed an amended seven-count complaint on March 17, 1994, asserting the following claims: (1) Dugan against Bell Atlantic Corporation (Bell Atlantic), Bell Telephone Company of Pennsylvania (Bell of PA), and Frank Hoffman (Hoffman), a Bell Atlantic employee, for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) Dugan against Bell Atlantic for violations of the Age Discrimination in Employment Act (ADEA) and the Pennsylvania Human Relations Act; (3) Dugan against Bell Atlantic and Hoffman for "negligence and/or intentional infliction of emotional distress;" (4) Dugan against Bell Atlantic and Hoffman for wrongful discharge; (5) Dugan against Bell Atlantic for breach of contract; (6) Dugan against Bell Atlantic for misrepresentation; and (7) Dugan's wife against Bell Atlantic and Bell of PA for loss of consortium.

The relevant facts alleged in plaintiffs' complaint are as follows. In 1971, Dugan obtained employment with Bell of PA and in 1980, he was promoted to a management position with Bell Atlantic, Bell of PA's parent corporation. Dugan performed successfully and obtained the position of supervisor at a record storage facility located in Greentree, Pennsylvania (the Greentree facility). Hoffman, a vice president with Bell Atlantic, headed the department for which Dugan worked. (Amended complaint, at ¶¶ 11–14).

#### 1. Fraud at Bell of PA and the alleged cover-up

In 1986, Bell of PA began an internal investigation into alleged theft and fraud at one of its divisions. Bell of PA took no action regarding the matter, however, and in 1987, the Pennsylvania Public Utilities Commission (PUC) began to investigate Bell of PA.[1] The PUC began its inquiry after receiving complaints from an anonymous employee that Bell of PA's investigation had been prematurely terminated due to improper management influence. (Amended complaint, at ¶¶ 15–17).

PUC's investigation of Bell of PA created a public controversy that resulted in additional investigation by the Pennsylvania State Leg-

---

1. The PUC has broad supervisory and regulatory powers over public utilities, including the power to set rates and to mandate adequate services standards. See 66 Pa.C.S.A. §§ 523, 1301, 1501.

islature. Early in 1989, the State Senate's Consumer Protection and Professional Licensure Committee (the State Senate Committee) began to inquire into allegations that Bell of PA and Bell Atlantic were retaliating against employees who were cooperating with PUC's investigation. (Amended complaint, at ¶¶ 41, 43).

The complaint alleges that in response to PUC's and the Senate Committee's investigations, Bell of PA, Bell Atlantic, and Hoffman (defendants) entered into an agreement to cover up waste and theft at Bell of PA and to retaliate against employees who refused to cooperate with their scheme. (Amended complaint, at ¶¶ 142–49). Defendants' actions were allegedly motivated by their desire to protect Bell Atlantic and Bell of PA from increased regulation and from negative publicity which could injure the companies' financial positions. (Amended complaint, at ¶ 150).

As part of the fraudulent scheme, between approximately June, 1987 and April, 1989, defendants allegedly provided to PUC, to the Senate Committee, and to company employees false information by way of sworn affidavits, letters, and telephone calls. The false information included statements that (1) denied that theft and fraud was occurring at Bell of PA, (2) denied Bell of PA's internal investigation had been prematurely terminated, and (3) misrepresented defendants' intentions to retaliate against employees who cooperated with PUC and the Senate Committee's investigations. (Amended complaint, at ¶ 144). In addition, defendants caused Bell of PA security personnel to use unlawful telephone taps and to pull toll records in order to identify employees who were divulging information so that "steps could be taken" to prevent their actions. (Amended complaint, at ¶¶ 20–31, 146(a)). In order to provide the appearance that defendants were seriously investigating fraud at Bell of PA, Hoffman was appointed to a new position called "inspector general" and was given responsibility for all fraud investigations at Bell

of PA. (Amended complaint, at ¶¶ 27, 55, 151).

### 2. Dugan's involvement

In approximately, February, 1989, the Senate Committee subpoenaed Bell of PA's chief executive officer to turn over certain employee toll records to determine whether Bell of PA management had attempted to review them. (Amended complaint, at ¶¶ 43–44, 49). The records were stored at the Greentree facility that Dugan supervised. (Amended complaint, at ¶¶ 50–52). In order to prevent the disclosure of these documents, defendants allegedly conspired to destroy them. (Amended complaint, at ¶¶ 48, 70, 144(e), 146(a)). When defendant Hoffman ordered Dugan to release the records to unauthorized personnel, however, Dugan refused to cooperate.[2] The complaint asserts that because Dugan failed to participate in the destruction of the records, his job was targeted for termination. (Amended complaint, at ¶ 152).

### 3. Retaliation against Dugan

The complaint alleges that in March, 1990, after the public controversy surrounding the investigations of Bell of PA subsided, defendants began to investigate when the lease on the Greentree facility expired. (Amended complaint, at ¶ 81). In July, 1990, Dugan was told that the Greentree facility would be closed within a year. Various individuals allegedly promised him, however, that he would be placed in another position within Bell Atlantic. (Amended complaint, at ¶¶ 82–85, 178–80).

After the Greentree facility closed, Bell Atlantic allegedly refused to place Dugan in another permanent position. For three years, Dugan received temporary assignments while younger, less experienced employees were placed in permanent job openings that Dugan could have performed. (Amended complaint, at ¶¶ 89, 158–63). In doing so, Bell Atlantic allegedly discriminated against Dugan because of his age. (Amended complaint, at ¶ 154). Dugan questioned Bell Atlantic's human resources de-

**2.** The complaint alleges that Dugan eventually released the sealed records to authorized individuals, but when the records arrived for review by the Senate Committee, the boxes were unsealed and most of the applicable records were missing. (Amended complaint, at ¶ 60).

partment about the unexplained difficulty in relocating him but received no satisfactory response. Dugan eventually filed a charge of age discrimination with the Pennsylvania Human Relations Commission and with the Equal Employment Opportunity Commission in January of 1993. (Amended complaint, at ¶¶ 96, 156–57).

Bell Atlantic ultimately discharged Dugan on January 14, 1993. (Amended complaint, at ¶ 131). At that time, Dugan was 47 years old. (Amended complaint, at ¶ 11).

## II. Discussion

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept as true all allegations in the complaint. Further, a court must draw all reasonable inferences therefrom and view them in the light most favorable to the plaintiff. *Rocks v. City of Philadelphia*, 868 F.2d 644, 654 (3d Cir.1989). The question before the Court is not whether the plaintiffs will ultimately prevail; rather, the question is whether the plaintiffs can prove any set of facts in support of their claim that will entitle them to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### A. Dugan's RICO claims against defendants

The liberal standard which applies to Rule 12(b)(6) motions to dismiss non-RICO claims also applies to RICO claims. *Rose v. Bartle*, 871 F.2d 331, 355–56 (3d Cir.1989). Further, RICO's legislative history indicates that courts should construe the statute to effectuate its remedial purposes. *Gardner v. Authorized Distribution Network, Inc.*, No. 91–5335, 1992 WL 245873, at *3 (E.D.Pa. Sept. 21, 1992) (*citing* Pub.L. 91–452, § 904(a), 84 Stat. 947).

### 1. RICO: in general

RICO authorizes civil suits by "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." *See* 18 U.S.C. § 1964; *Kehr Packages, Inc. v. Fidel-*

cor, *Inc.*, 926 F.2d 1406, 1411 (3d Cir.), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Section 1962 contains four separate subsections, prohibiting the following activities: (1) investing income derived from a pattern of racketeering activity in the operation of an enterprise that engages in interstate commerce (§ 1962(a)), (2) acquiring or maintaining, through a pattern of racketeering activity, any interest or control over such an enterprise (§ 1962(b)), (3) conducting the affairs of an enterprise through a pattern of racketeering activity (§ 1962(c)), and (4) conspiring to violate any subsection described above (§ 1962(d)). 18 U.S.C. § 1962; *Kehr Packages*, 926 F.2d at 1411.

In the instant case, Dugan has alleged violations of §§ 1962(b), (c), and (d). Defendants have raised a number of alternative grounds for dismissal of all of Dugan's RICO claims. For the following reasons, the Court finds certain of defendants' arguments [3] persuasive, and will dismiss Count I of the amended complaint in its entirety.

### 2. § 1962(b) claim

Section 1962(b) makes it unlawful:

for any person through a pattern of racketeering activity or through collection of an unlawful debt to *acquire or maintain*, directly or indirectly, *any interest in or control of* any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b) (emphasis added).

In order to have standing to sue under § 1962(b), a plaintiff must allege injury *that results* from a § 1962(b) violation. *Casper v. Paine Webber Group, Inc.*, 787 F.Supp. 1480, 1494 (D.N.J.1992). Such an injury may be shown, for example, where the owner of an enterprise infiltrated by a defendant's racketeering activity is injured by the defendant's acquisition or control of his enterprise. *Id.*

---

**3.** The Court will address only the arguments that have affected its decision to dismiss Dugan's RICO claims.

In *Casper*, the Court dismissed a § 1962(b) claim because the plaintiff did not allege injury that resulted from the defendants' acquisition or control of a RICO enterprise. 787 F.Supp. at 1494–95. In *Casper*, a former employee sued her former employer, its parent company, and her supervisor, alleging various RICO violations. *Id.* at 1483. The plaintiff asserted that the defendants formed and implemented an unlawful scheme for the purpose of defrauding the government. *Id.* at 1484–85. The plaintiff claimed that she was fired because she uncovered defendants' scheme and refused to participate in their illegal activity. *Id.* at 1488.

Plaintiff claimed that her discharge amounted to a violation of § 1962(b) of RICO. *Id.* at 1494. The Court noted that "in order to have standing to sue [under § 1962(b)], a plaintiff must allege injury from defendants' *acquisition or control* of an interest in a RICO enterprise." *Id.* (emphasis added). The Court found, however, that the plaintiff's alleged injury, stemming from her hiring and discharge, was not a result of the defendants' acquisition or control of a RICO enterprise. *Id.* at 1494–95. The Court stated:

> [Plaintiff] advances a "but for" argument; but for the acquisition or control, Defendants would not have been able to carry out the Predicate Acts which injured her. The Amended Complaint does not allege [plaintiff] was injured by virtue of the alleged acquisition of control over the Enterprise....

*Id.* at 1495; *see also Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1168 (3d Cir. 1989) (holding a § 1962(b) claim was not maintainable because the alleged harm, discharge from employment, did not result from the defendant's acquisition or control of an enterprise).

■ In the instant case, defendants have correctly asserted that Dugan does not have standing to bring a § 1962(b) RICO action because he does not allege any injury that results from defendants' acquisition or maintenance of an interest in an enterprise. As was the case in *Casper*, Dugan's alleged inju-

ry stems from his loss of employment. (Amended complaint, at ¶ 154; plaintiffs' RICO statement, at ¶ 15). Dugan's injury does not result *from the fact of* defendants' acquisition or maintenance of control over an enterprise. Therefore, Dugan has not adequately alleged standing to sue for a violation of § 1962(b), and the portion of Count I that asserts a § 1962(b) claim will be dismissed.

### 3. *§ 1962(c) claim*

■ Section 1962(c) of RICO states that it is unlawful for:

> any *person* employed by or associated with any *enterprise* ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (emphasis added). Liability under § 1962(c) rests only upon the culpable "person," not upon the enterprise. *Leonard v. Shearson Lehman/Am. Express, Inc.*, 687 F.Supp. 177, 181–82 (E.D.Pa.1988).

■ It is well settled that to state a claim under § 1962(c), the plaintiff must allege that the defendant "person" is distinct from the "enterprise." *See, e.g., Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993); *Glessner v. Kenny*, 952 F.2d 702, 710–14 (3d Cir.1991); *B.F. Hirsch v. Enright Ref. Co.*, 751 F.2d 628, 633–34 (3d Cir.1984). This "distinctiveness requirement" ensures that RICO sanctions are directed at the persons who conduct the illegal activity, rather than the enterprise through which the activity is conducted. *Glessner*, 952 F.2d at 710.

■ In the instant case, the amended complaint states that the "enterprise" for purposes of § 1962(c) consists of an association in fact of Bell Atlantic (the parent corporation), Bell of PA (a subsidiary of the parent corporation), and Hoffman (an employee of the parent corporation). (Amended complaint, at ¶ 136). As defendants have argued, this "enterprise," consists simply of defendant "persons" named in the amended complaint and thus fails the distinctiveness requirement.[4]

---

4. The Court notes that the amended complaint

alleges that the defendants Bell Atlantic and Bell

Dugan has not argued that the amended complaint alleges a distinction between defendant persons and the RICO enterprise. (Plaintiffs' brief, at 15). Rather, Dugan asserts that the person-enterprise distinction requirement "may now be obsolete...." *Id.*

Dugan argues that the Third Circuit established the distinctiveness requirement because it believed that "unless 'person' is read as separate, legitimate corporations might be punished when they were the innocent victims of racketeering activity." (Plaintiffs' brief, at 17). Because the Supreme Court has recently clarified that RICO may be applied to enterprises which are not "innocent victims," *National Organization for Women, Inc. v. Scheidler,* — U.S. —, —–—, 114 S.Ct. 798, 804–05, 127 L.Ed.2d 99 (1994) (hereinafter *NOW*), Dugan asserts that the "separateness interpretation" is no longer valid. (Plaintiffs' brief, at 17–18).

Dugan's argument that the person-enterprise distinction is "obsolete" is unpersuasive. First, although the Supreme Court in *NOW* stated that an enterprise for purposes of § 1962(c) need not be legitimate, the Court did not address the distinctiveness requirement in any respect. The Court specifically stated that the *only* issue it was deciding was whether plaintiffs had to allege an enterprise with an economic motive to state a valid claim under § 1962(c). *Id.* at —, 114 S.Ct. at 806.

Further, even though the enterprise for purposes of § 1962(c) does not have to be an innocent victim, it does not follow that the distinctiveness requirement is eviscerated.

The Third Circuit did not establish the person-enterprise distinctiveness requirement solely to protect innocent corporations from § 1962(c) liability. *B.F. Hirsch,* 751 F.2d at 633. The Court also relied upon the language of § 1962(c). In *B.F. Hirsch,* the Third Circuit noted that § 1962(c) places liability on the defendant "persons" who are "employed by or associated with an enterprise." The Court reasoned that "it is not logical to say that [one company] is associated with [itself]." *Id.* Therefore, the Court concluded that a "person" must be associated with a separate enterprise before there can be any RICO liability under § 1962(c). *See also Glessner,* 952 F.2d at 710 (approving dismissal of § 1962(c) claim that named three affiliated corporations as both defendant persons and collectively as the enterprise); *Brittingham v. Mobile Corp.,* 943 F.2d 297, 300–03 (3d Cir.1991).

Thus, the Court concludes that in light of the plain language of § 1962(c), as well as the clearly established Third Circuit precedent,[5] alleging a distinction between the person and the enterprise remains a valid requirement for stating a claim under § 1962(c).

Dugan also argues that not only did *NOW* undercut the distinctiveness requirement, the Third Circuit itself has "not totally precluded a person from functioning as an enterprise." (Plaintiffs' brief, at 18). Dugan notes that in *Bartle,* 871 F.2d 331, the Third Circuit held that a political party could be both an enterprise insofar as it served as a vehicle for racketeering activity and as a defendant-person insofar as it engaged in racketeering. Dugan asserts that under *Bartle,* he has a valid claim because "Bell Atlantic and Bell of

---

of PA function as separate and apart from "the pattern of activity in which they associated as an enterprise." (Amended complaint, at ¶ 137). Even with this statement, however, the amended complaint fails to satisfy the person-enterprise distinction because Dugan has provided no factual allegations which support the separation. Although courts must accept as true all factual allegations in a complaint when ruling on Rule 12(b)(6) motions, courts need not rely on bald assertions or insupportable conclusions. *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989).

**5.** The vast majority of appellate courts have held that the defendant person and the enterprise cannot be the same entity for purposes of

§ 1962(c) liability. *See, e.g., Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 29 (1st Cir.1987); *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Atkinson v. Anadarko Bank and Trust Co.,* 808 F.2d 438, 441 (5th Cir.), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987); *Morgan v. Bank of Waukegan,* 804 F.2d 970, 978 (7th Cir.1986); *Bennett v. Berg,* 685 F.2d 1053, 1061–62 (8th Cir.1982), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *United States v. Benny,* 786 F.2d 1410, 1415–16 (9th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).

PA served as both a vehicle for certain acts by Hoffman and others, and as a victim...." (Plaintiffs' brief, at 18).

Dugan's reliance on *Bartle* is misplaced. Although the *Bartle* Court held that a political party could be both an enterprise and a defendant, the plaintiffs in *Bartle* had alleged that more than one enterprise existed. The Court permitted the political party to remain a defendant only insofar as it engaged in racketeering activity and harmed an enterprise *different and separate from itself. Id.* at 359. The *Bartle* Court did not hold that a defendant that associated with itself and engaged in racketeering could be held liable under § 1962(c).

Furthermore, Dugan has failed to address Third Circuit precedent that rejects attempts by plaintiffs to avoid the § 1962(c) distinctiveness requirement by naming as an enterprise a defendant corporation that has associated with a subsidiary or with an employee. *See Glessner,* 952 F.2d at 710–12; *Brittingham,* 943 F.2d at 302–03. For example, in *Glessner,* the plaintiffs had named as defendants and as an enterprise a parent corporation, its subsidiary, the successor of the parent corporation, and various company officials. The district court dismissed the complaint because it failed the distinctiveness requirement. On appeal, plaintiffs attempted to satisfy the separation requirement by alleging that the parent corporation could be viewed as the "person" conducting the affairs of the subsidiary, which could then be viewed as the enterprise, and vice versa. *Id.* at 710. The Third Circuit upheld dismissal of the complaint, noting that the plaintiffs had not justified a determination that the parent corporation and its subsidiary were distinct for purposes of the RICO claim. Without any reason to consider the companies separate, the Court held that a subsidiary corporation cannot constitute the enterprise through which a parent corporation conducts racketeering activity. *Id.* at 710–11.

The *Glessner* Court also held that plaintiffs cannot satisfy the distinctiveness requirement by alleging as the enterprise an association in fact consisting of a corporation and

employees who act for the corporation. *Id.* at 711. The Court noted that corporations must always act through their employees and agents, and any corporate act will be accomplished through an association of these individuals. *Id.* at 712. The Court stated that the distinctiveness requirement would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees *acting on its behalf. Id.* at 712. Therefore, the Court concluded that without allegations or evidence that the defendant corporation had an active role in the racketeering activity distinct from the undertakings of its employees, the distinctiveness requirement is not satisfied. *Id.*

In the instant case, Dugan has not alleged any facts which would indicate Bell Atlantic and Bell of PA are sufficiently distinct to permit the subsidiary to be viewed as the enterprise and the parent to be viewed as the defendant, or vice versa. In addition, Dugan has not alleged that either corporation had an active role in the alleged racketeering activity different or distinct from the actions of Hoffman or other employees or agents who acted on behalf of the corporations.

Because Dugan has not properly alleged an "enterprise" which is independent and distinct from defendants, the portion of Count I related to this claim will be dismissed.

### 4. § 1962(d) claim

According to § 1962(d):

[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1962(d). The Third Circuit has clarified that any "claim under § 1962(d) based on a conspiracy to violate the other subsections of § 1962 necessarily must fail if the substantive claims [under subsections (a), (b), and (c)] are themselves deficient." *Lightning Lube,* 4 F.3d at 1191. Because Dugan has not alleged a viable claim under §§ 1962(b) or (c), his § 1962(d) conspiracy claim must also fail.[6] Therefore, the portion

---

6. Dugan has argued that even if this Court dismisses his claims for relief under §§ 1962(b) and

(c), the Court should still sustain his § 1962(d) conspiracy claim. The case on which Dugan

of Count I that relates to § 1962(d) will be dismissed.

### B. Dugan's age discrimination claim against Bell Atlantic

The amended complaint also alleges that Bell Atlantic discriminated against Dugan based upon his age and retaliated against him for complaining of discrimination to Bell Atlantic's human resources department and to other Bell Atlantic officers. (Amended complaint, at ¶ 164). The amended complaint seeks relief for this discrimination under both the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 et seq.

Bell Atlantic argues that Dugan has not asserted a valid claim under the ADEA or the PHRA because he "cannot plead that age discrimination was the sole cause for his termination." (Defendants' brief, at 21). Bell Atlantic asserts that Dugan has alleged that the articulated business reason for his dismissal is a *pretext* for discrimination. Relying on *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 472 (3d Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993), Bell Atlantic continues that in "pretext" discrimination cases, plaintiffs must allege that discrimination is the *sole* cause of the adverse employment action. Because Dugan has asserted that his loss of employment results from factors in addition to his age (including the factors discussed at Count I), Bell Atlantic argues that age discrimination could not have been the sole cause of his discharge, and the Court should dismiss his claim. (Defendants' brief, at ¶¶ 21–22).

■ Bell Atlantic's argument for dismissal of Dugan's age discrimination claim is unpersuasive for at least three reasons. First, plaintiffs have the right to plead inconsistent theories of relief in federal court. Fed.R.Civ.P. 8(e)(2) states:

A party may set forth two or more statements of a claim or defense alternatively

or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. *A party may also state as many separate claims or defenses as the party has regardless of consistency . . . .*

(emphasis added). This rule clearly allows parties to present as many separate and alternative claims as they have, regardless of their consistency. Therefore, although Dugan has alleged that he was improperly fired because of various reasons, Dugan remains capable of proving at trial that age discrimination was the "sole cause" of his discharge.

■ Second, Bell Atlantic's interpretation of *Griffiths* as requiring that plaintiffs in "pretext" cases prove age discrimination is the sole cause of their job loss is itself subject to question. Before *Griffiths*, numerous Third Circuit decisions have required that plaintiffs show only that the prohibited motive was a "determinative" factor, rather than the sole cause, of their discharge from employment. *See, e.g., Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078–79 (3d Cir. 1992); *Billett v. CIGNA Corp.*, 940 F.2d 812, 816 (3d Cir.1991); *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 764 (3d Cir.1989), cert. denied sub nom., CBS, Inc. v. Bruno, 493 U.S. 1062, 110 S.Ct. 880, 107 L.Ed.2d 962 (1990); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897–98 (3d Cir.) (en banc), cert. dismissed, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Defendants argue that *Griffiths* changed the standard, apparently relying on the Court's statement that:

It is clear in pretext cases that the *claim is that* the discriminatory motive was the sole cause of the employment action and therefore it is inappropriate to state that the plaintiff only need show that the dis-

---

relics for this proposition, *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir.1989), is inapposite to this case, however. In *Shearin*, the Third Circuit allowed the plaintiff to pursue a § 1962(d) claim even though her §§ 1962(a) and (c) RICO claims were dismissed. The plaintiff

had presented a colorable claim under the substantive RICO provisions *on behalf of others* but had no standing to pursue the claims herself. *Id.* at 1168–70. In the instant case, Dugan has not asserted any colorable RICO claim and, as a result, his § 1962(d) must be dismissed.

crimination played a "motivating" or "a substantial role."

988 F.2d at 472 (emphasis in original). The *Griffiths* Court arguably did not intend this statement to significantly change the burden of proof in pretext cases, however. Early in the *Griffiths* opinion, the Court used the term "sole cause" interchangeably with "determinative factor." *Id.* at 468.[7] Therefore, the *Griffiths* Court may have intended to require that plaintiffs prove that a discriminatory motive was *either* the sole cause *or* the determinative cause of their loss of employment. Further, even if the Court in *Griffiths* had intended to overrule earlier Third Circuit precedent, the Court had no power to do so. A panel of the Third Circuit may not overrule an en banc decision of that Court. *See Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 53 n. 2 (3d Cir.), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). As a result, pending the Third Circuit's resolution of this issue en banc in *Miller v. CIGNA Corp.*, No. 93–1773, 1994 WL 283269 (3d Cir. June 28, 1994), this Court concludes that Dugan need only prove that age discrimination was a determinative factor in his dismissal.

Finally, at this stage of the proceedings, it is not clear whether Dugan's age discrimination claim is a "pretext" case. Two types of employment discrimination cases exist: (1) "pretext" cases, and (2) "mixed motive" cases. *Griffiths*, 988 F.2d at 468. In a pretext case, the plaintiff-employee alleges that the employer's facially legitimate reason for the employment decision was false and thus not the real reason for the decision. In contrast, in a mixed motive case, the plaintiff provides some proof that the employment decision resulted from a mixture of legitimate reasons and prohibited discriminatory motives. *Id.* at 468–69.[8] In mixed motive cases, the plaintiff does not argue that the legitimate motives articulated by the employer did not motivate the employment decision.

Rather, the plaintiff contends that additional improper motives also played a role in the decision. *Id.*

It is unclear at this stage of the proceedings whether Dugan's claim is a pretext or mixed motives case. While his appears to be a pretext case, Dugan will have the opportunity during discovery to develop this litigation in the manner that he sees fit.

*C. Dugan's "negligence and/or intentional infliction of emotional distress claim against Bell Atlantic and Hoffman"*

■ In Count III of the amended complaint, Dugan seeks to recover against Bell Atlantic and Hoffman for their alleged intentional and/or negligent infliction of emotional distress upon Dugan. (Amended complaint, at ¶¶ 167–69). Dugan claims that defendants intentionally harassed him in retaliation for his actions in protecting records requested by the Senate Committee, asserting that such harassment caused him to suffer damages of "great emotional distress, including physical symptoms ... such as lack of sleep, the fact that he required medical treatment, medication, and a period of disability from work." (Amended complaint, at ¶¶ 167, 169).

■ Defendants have correctly asserted that the Court should dismiss this claim. Pennsylvania courts have held that an employee's sole remedy for injuries allegedly sustained during the course of employment are provided by the Pennsylvania Workmen's Compensation Act (WCA). *See, e.g., Papa v. Franklin Mint Corp.*, 583 A.2d 826, 826–27 (Pa.Super.1990); *Barber v. Pittsburgh Corning Corp.*, 555 A.2d 766, 768–72 (Pa.1989); *accord Gilmore v. Manpower, Inc.*, 789 F.Supp. 197, 197–99 (W.D.Pa.1992). The exclusivity provision of the WCA provides in pertinent part:

7. For example, the Court stated, "[Defendants] maintain that in an employment discrimination case the improper motive was the 'but for' cause of the adverse employment action, meaning that the discriminatory motive was the *sole* cause or *the* determinative factor." *Id.* (emphasis in original).

8. At a bare minimum, a plaintiff seeking to advance a mixed motives case must provide proof that includes conduct or statements made by persons involving the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude. *Griffiths*, 988 F.2d at 470.

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death....

77 Pa.S.A. § 481(a). The WCA's exclusivity provision bars even a cause of action based upon an intentional tort, including a claim for intentional infliction of emotional distress.[9]

Dugan's claim for intentional and/or negligent infliction of emotional distress arose out of his employment relationship will Bell Atlantic and is thus barred by the exclusivity provision of the WCA. As a result, this Court will dismiss Count III of the amended complaint.

### D. Dugan's wrongful discharge claim against Bell Atlantic and Hoffman

In Count IV of the amended complaint, Dugan asserts a pendent state law claim for wrongful discharge against Bell Atlantic and Hoffman. Dugan claims that defendants retaliated against him for failing to participate in their destruction of telephone records that were subject to an official investigation, and his discharge thus violates public policy. (Amended complaint, at ¶¶ 171–76). Defendants contend that even if such retaliatory conduct occurred, the conduct violated no clearly mandated public policy and is, therefore, not actionable under Pennsylvania's wrongful discharge law.

### 1. Public policy exception to the at-will doctrine

Absent a statutory or contractual provision to the contrary, Pennsylvania courts have long held that employment contracts are terminable "at-will," and as a result, employers may discharge employees with or without just cause. See, e.g., Niehaus v. Delaware Valley Medical Ctr., 429 Pa.Super. 119, 631 A.2d 1314, 1315 (1993); Nix v. Temple University, 408 Pa.Super. 369, 596 A.2d 1132, 1135 (1991).

In Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174, 180 (Pa. 1974), the Pennsylvania Supreme Court suggested that there may be an exception to the at-will doctrine. The Court stated:

It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might possibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened.... We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relation and no clear mandate of public policy is violated thereby, an employee at-will has no right of action against his employer for wrongful discharge.

Id. Post–Geary decisions applying Pennsylvania law have confirmed that Pennsylvania recognizes an exception to the at-will doctrine. The courts have held that a common law cause of action exists for wrongful discharge where an employer's actions in firing an employee violate a clearly mandated public policy.[10]

9. See, e.g., Rodgers v. Prudential Ins. Co., 803 F.Supp. 1024, 1030 (M.D.Pa.1992) (granting motion for summary judgment on claim for intentional infliction of emotional distress); Gilmore, 789 F.Supp. at 198 (granting employer's motion for partial summary judgment on intentional infliction of emotional distress claim); Stylianoudis v. Westinghouse Credit Corp., 785 F.Supp. 530, 532 (W.D.Pa.1992) (denying motion to amend complaint to include intentional infliction of emotional distress claim as futile); James v. International Business Machines, Inc., 737 F.Supp. 1420, 1427 (E.D.Pa.1990); Poyser v. Newman and Co., Inc., 514 Pa. 32, 522 A.2d 548, 551 (Pa.1987) (holding that exclusivity provision of WCA bars a common law cause of action against an employer for an intentional tort).

10. See, e.g., Field v. Philadelphia Elec. Co., 388 Pa.Super. 400, 565 A.2d 1170, 1180–82 (1989) (employee, hired as an expert in nuclear safety, could not be discharged for making statutorily required report to the Nuclear Regulatory Commission); Hunter v. Port Authority, 277 Pa.Super. 4, 419 A.2d 631, 634–38 (1980) (denial of public employment to pardoned individual because of assault conviction which had no relevance to fitness for job violated public policy embodied in Pennsylvania's Constitution that guaranteed an individual's right to engage in any common occupation); Reuther v. Fowler & Williams, Inc., 255

■ Although courts determine whether an employee's discharge violates a clearly mandated public policy on a case-by-case basis, *Turner v. Letterkenny Fed. Credit Union*, 351 Pa.Super. 51, 505 A.2d 259, 261 (1985), the Third Circuit has provided some guidance in this area. The Court has stated that an employee's dismissal offends clear mandates of public policy if it results from conduct on the part of the employee that is required by law or from the employee's refusal to engage in conduct prohibited by law. *See, e.g., Clark v. Modern Group, Ltd.*, 9 F.3d 321, 330–32 (3d Cir.1993); *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1344 (3d Cir.1990), *cert. denied*, 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991); *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699, 701–02 (3d Cir.1988).

In *Woodson*, for example, a barmaid was dismissed for refusing to comply with her employer's order to serve an intoxicated patron. 842 F.2d at 700–01. The barmaid filed a wrongful discharge claim in federal court and received a jury verdict in her favor. *Id.* at 701. The Third Circuit noted that under Pennsylvania law, the barmaid had a legal obligation to refuse to serve intoxicated patrons. As a result, the Court indicated that the wrongful discharge verdict was supported by the record. *Id.; see also Clark*, 9 F.3d at 331 ("When an employer that is engaging, or is about to engage, in an illegal activity seeks to coerce its employees into participating in that activity or condoning it by silence, the public's interest in exposing unlawful activity overrides the doctrine of employment at-will.").

### 2. Application of the public policy exception

■ In the instant case, defendants maintain that Dugan has no cause of action for

wrongful discharge because he does not identify any clearly mandated public policy that defendants violated by firing him. (Defendants' brief, at 24–25). Defendants argue that under Pennsylvania law, a clear mandate of public policy is violated only when the firing occurred because the employee refused to give up a statutory or constitutional right. *Id.* Defendants claim that Dugan had no statutory or constitutional obligation "to defy his superiors' direct orders to release records into their custody." Defendants note that Dugan did not allege that defendants asked him to destroy the records himself; rather, Dugan alleges that he was aware of defendants' illegal plan to destroy the records and refused to release the records into their custody.

The Court rejects defendants' arguments and finds that Dugan has alleged sufficient facts to survive dismissal of his wrongful discharge claim. The Third Circuit has specifically stated that if an employer coerces an employee into participating in illegal activity, the public policy exception to the at-will doctrine is applicable. *Clark*, 9 F.3d at 331. In the instant case, Dugan may be able to demonstrate that he was fired for his failure to participate in illegal activity. Dugan has alleged that defendants conspired to destroy records that were subpoenaed by the Pennsylvania state legislature as part of an official investigation. (Amended complaint, at ¶¶ 144(e), 146(a)). Defendants' alleged conduct may have been illegal under various provisions of Pennsylvania law.[11] Further, if Dugan had released the records to unauthorized individuals and participated in the unlawful scheme to destroy the documents, he may also have been criminally liable. (Plaintiffs' brief, at 26); *see also* 18 Pa.C.S.A. § 306 (accomplice liability). In light of the nature of defendants' alleged conduct—destruction of documents related to the state

---

Pa.Super. 28, 386 A.2d 119, 120–22 (1978) (interference with at-will employee's duty to serve on jury, a duty expressly protected by statute, violates public policy).

11. Under Pennsylvania law, it is unlawful to intentionally obstruct or impair the administration of any government function with an unlawful act. 18 Pa.C.S.A. § 5101. It is also unlawful to "destroy, conceal, remove or otherwise impair" a document that is required by law to be kept for

information of the government. 18 Pa.C.S.A. § 4911. Further, public utilities in Pennsylvania have an obligation to furnish information to the PUC, 66 Pa.C.S.A. § 505, and criminal sanctions may be imposed on any person who "knowingly fails ... to comply" with any order or requirement of the PUC. 66 Pa.C.S.A. § 3302. Defendants' conduct may have violated any or all of these provisions.

government's investigation of a public utility—the public interest in this matter is especially great, and Dugan will be given the opportunity to prove that he was fired because he failed to participate in unlawful conduct.

### E. Dugan's contract claim against Bell Atlantic

In Count V of the amended complaint, Dugan has alleged a breach of contract claim against Bell Atlantic. Dugan claims that Bell Atlantic made promises and had a policy of not retaliating against employees who cooperated with PUC and the Senate Committee. Dugan states that the promises and policy constituted an implied in fact contract and he seeks to recover because he relied on them to his detriment.[12] (Plaintiffs' brief, at ¶ 25; amended complaint, at ¶ 188). Defendants argue that Dugan's breach of contract claim should be dismissed because Dugan was an at-will employee and the alleged promises and policy could not have transformed the status of his employment relationship. (Defendants' brief, at 28–29).

#### 1. Implied in fact contract

As previously discussed, case law in Pennsylvania holds that the employment at-will doctrine applies absent an intent by the parties to the contrary. *Anderson v. Haverford College*, 851 F.Supp. 179, 179–181 (E.D.Pa.1994). The presumption in favor of employment at-will may be overcome by an express contract between the parties. In addition, the presumption may be overcome by an "implied in fact contract." An implied in fact contract exists if "additional consideration" passes from the employee to the employer from which the Court can infer that the parties did not intend to establish an at-will employment relationship. *Scott*, 545 A.2d at 338–39.

In *Scott*, a Pennsylvania appellate court addressed the type of additional consideration that is necessary for an "implied in fact" contract to exist between an employee and an employer. The plaintiff in *Scott* sued her former employer alleging, among other things, that her discharge violated an implied in fact contract between the parties. *Id.* at 338. Plaintiff claimed that a written agreement in which plaintiff gave her employer the right to take any inventions or improvements that she might make and in which she agreed not to divulge any secrets of the employer constituted additional consideration sufficient to overcome the at-will presumption. *Id.*

The Court disagreed. The Court stated that additional consideration sufficient to establish an implied in fact contract only exists when an employee affords his employer a benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform. *Id.* at 339 (*citing Darlington v. General Elec.*, 350 Pa.Super. 183, 504 A.2d 306, 314–15 (1986)). The Court found that the plaintiff in *Scott* had not provided any services besides those for which she was compensated nor sacrificed anything tangible beyond that for which she was paid. As a result, the Court found no implied in fact contract existed and held that the employment relationship was terminable at will. *Id.*; *see also Ruby v. Federal Express*, No. 92–2790, 1992 WL 229877, at *2–3 (E.D.Pa. Sept. 8, 1992) (finding an implied in fact contract did not exist where employee gave no consideration to employer for employer's promise).

In the instant case, Dugan asserts that Bell Atlantic's promise that the company would not retaliate against employees, as well as Bell Atlantic's policy against retaliato-

---

12. In the amended complaint, Dugan also appears to base his breach of contract claim on alleged unfulfilled promises by various Bell Atlantic employees that he would receive a permanent position within the company after his old position was eliminated. (Amended complaint, at ¶¶ 178–80). Dugan correctly does not argue this as a basis for recovery in his brief opposing defendants' motion for dismissal. Under Pennsylvania law, even a promise of permanent employment does not give rise to an implied in fact contract. *See, e.g., Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334, 337 (1988); *Ross v. Montour R.R. Co.*, 357 Pa.Super. 376, 516 A.2d 29, 31–32 (1986); *Murphy v. Publicker Indus., Inc.*, 357 Pa.Super. 409, 516 A.2d 47, 52 (1986).

ry discharges, resulted in an implied in fact contract between himself and the company.[13] (Plaintiffs' brief, at 25). However, Dugan has not alleged that he provided any consideration besides his employment services to Bell Atlantic. Therefore, the Court finds that no implied in fact contract existed in this case.

### 2. Promissory estoppel

■ Although Dugan characterizes his cause of action against Bell Atlantic as a "breach of contract" claim, Dugan actually argues that he should recover under the doctrine of promissory estoppel. Dugan claims he should recover because he relied to his detriment on defendants' alleged promises and policy not to engage in retaliatory discharges. (Plaintiffs' brief, at 24–25). Dugan cites one Pennsylvania Superior Court case, *Niehaus*, 631 A.2d 1314, as supporting recovery on this basis. In *Niehaus*, the Court held that an employer's promise to an employee that the employer would rehire the employee following an approved leave of absence was enforceable under the principles of promissory estoppel. *Id.* at 1317–20. *Niehaus* is inapposite to this case, however. First, the Court in *Niehaus* specifically stated that its holding was limited to the facts involved, i.e., where an employee takes a leave of absence with an employer's express approval and is promised re-employment at the end of such approved leave. *Id.* at 1318 n. 4. In addition, as Bell Atlantic has argued, *Niehaus* is directly contrary to the Pennsylvania Supreme Court's holding in *Paul V. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346, 348 (1990), that Pennsylvania law "does not prohibit firing an employee for relying on an employer's promise." Further, courts have specifically held Pennsylvania law does not recognize a cause of action based on an employee's detrimental reliance on an employer's past policies and practices. *See, e.g., Anderson*, 851 F.Supp. at 183–84.

Applying the principles of *Paul* and *Anderson*, this Court finds that Dugan can-

not assert a claim based on his reliance upon Bell Atlantic's alleged promise and policy not to engage in retaliatory discharges. Thus, the Court will dismiss Count V of the amended complaint.

### F. Dugan's misrepresentation claim against Bell Atlantic

■ Dugan also seeks to recover against Bell Atlantic for "misrepresentation." Specifically, Dugan alleges that he relied to his detriment on Bell Atlantic representatives' intentional and fraudulent misrepresentations that Dugan would be placed in a permanent position after the Greentree facility closed. (Amended complaint, at ¶¶ 192–94).

Defendants have correctly argued that the Court should dismiss Dugan's misrepresentation claim. In *Chaiton v. Frito–Lay, Inc.*, No. 87–385, 1987 WL 47837, at *7–8 (M.D.Pa. Nov. 11, 1987), the Court held that an at-will employee could not recover under Pennsylvania law based upon an employer's alleged fraudulent misrepresentations concerning the employee's length of employment. In *Chaiton*, the plaintiff had alleged that she had detrimentally relied on her former employer's intentional misrepresentations regarding the future length of her employment. *Id.* at *8. The Court initially noted that the plaintiff was an at-will employee and stated that even if the plaintiff had correctly interpreted the employer's statements regarding her future term of employment, the employer had the ability to fire the plaintiff for any reason. *Id.* at *8. As a result of the at-will employment relationship that existed between the plaintiff and her employer, the Court concluded that any statements made by the employer regarding plaintiff's future term of employment were "no more than puffing," and thus entered summary judgment in favor of the employer. *Id.*

In the instant case, Dugan, like the plaintiff in *Chaiton*, was an at-will employee, and as a result, cannot recover based on Bell Atlantic's alleged fraudulent misrepresenta-

---

**13.** Dugan apparently considers an implied in fact contract and promissory estoppel to be identical theories of recovery. (Plaintiffs' brief, at 24–25). The theories are not identical, however, and to recover on an implied in fact contract, a plaintiff must demonstrate consideration was provided. *See Darlington*, 504 A.2d at 314–15. To recover under promissory estoppel, however, a plaintiff must only demonstrate reliance on a promise. *See Niehaus*, 631 A.2d at 1317–20.

728

tions concerning the future length of Dugan's employment with Bell Atlantic. Thus, the Court will dismiss Count VI of the amended complaint.

### G. Wife-plaintiff's claim for loss of consortium against Bell Atlantic and Bell of PA

■ In Count VII of the amended complaint, wife-plaintiff has asserted a loss of consortium claim alleging that as a result of defendants' actions, she was "obligated to expend various and diverse sums of money for medicines and medical treatment and care in an effort to cure her husband of the ills and injuries he suffered, and will be obliged to continue to do so for an indefinite time in the future." (Amended complaint, at ¶¶ 196–97). Defendants assert that this claim must be dismissed because wife-plaintiff's claim is "purely derivative of Dugan's legally insufficient claims." (Defendants' brief, at 31).

■ The Court finds that even if Dugan successfully recovers on his age discrimination and wrongful discharge claims, wife-plaintiff cannot assert a cause of action for loss of consortium. Under Pennsylvania law, loss of consortium is recognized as a:

> right growing out of the marriage relationship which the husband and wife have respectively to the society, companionship and affection of each other in their life together. As thus defined and limited, any interference with this right of consortium by the *negligent injury* to one's spouse, should afford the other spouse a legal cause of action to recover damages for that interference.

*Burns v. Pepsi–Cola Metro. Bottling Co.,* 510 A.2d 810, 812 (1986) (emphasis added); *see also Anchorstar v. Mack Trucks, Inc.,* 533 Pa. 177, 620 A.2d 1120, 1122 (1993) (cause of action for loss of consortium involves "loss of services, society, and conjugal affection of one's spouse."). Because the nature of a loss of consortium claim involves damages for lost "services," recovery is limited to cases in which the plaintiff's spouse suffers injury of a *personal* nature, whether physical or emotional. *See* Janet Boeth Jones, *Necessity of Physical Injury to Support a Cause of Ac-*

*tion for Loss of Consortium,* 16 ALR 4th, 537 (1982). In fact, no court construing Pennsylvania law has permitted recovery on a loss of consortium claim based solely on *pecuniary* injuries to the plaintiff's spouse, and Pennsylvania courts will not likely extend the law of consortium to that extent.

In the instant case, the Court has found that the only claim on which Dugan has alleged injuries of a personal nature rather than a pecuniary nature—intentional and/or negligent infliction of emotional distress—is legally insufficient. As a result, wife-plaintiff's claim for loss of consortium set forth in Count VII of the amended complaint is itself legally insufficient and will be dismissed.