Norman L. JOHNSON

v.

**RESOURCES FOR HUMAN DEVELOPMENT.**

Civ. A. No. 93–5360.

United States District Court, E.D. Pennsylvania.

Feb. 23, 1995.

See also 860 F.Supp. 218.

---

Bailey, Hardy & Alm, Harrisburg, PA, for Don Bailey.

Klehr, Harrison, Harvey, Branzburg & Ellers, Allentown, PA, for Joan R. Sheak.

### MEMORANDUM

JOYNER, District Judge.

### INTRODUCTION

Today we rule on Defendant's Motion for Summary Judgment. The litigation arises under the 1st, 5th, 13th and 14th Amendments to the United States Constitution pursuant to 42 U.S.C. § 1981 and Title VII of

the Civil Rights Act of 1964, §§ 2000e—2000e–17 (1994). Norman L. Johnson has sued his former employer, Resources for Human Development (RHD), claiming that he was fired because of his race. RHD asserts that he was fired only for legitimate, nondiscriminatory reasons.

## FACTUAL BACKGROUND

According to the Amended Complaint, Johnson is a licensed psychologist and was hired as Clinical Director for a residential program for troubled children in March, 1992. In June, 1993, Johnson was terminated by RHD and allegedly replaced by less experienced and less qualified white individuals. His Amended Complaint alleges a general racist environment at RHD resulting in disparate work assignments and access to facilities, as well as other disparate treatments of all African American employees, including himself. His Amended Complaint further alleges that he was fired from his position on account of his race.

According to RHD, Johnson was terminated because of his generally poor work product, uncooperative attitude, and refusals to follow instructions from supervisors. According to RHD, and corroborated by Johnson in notes he made at the time as well as at his deposition, the termination was precipitated by a series of events in late May, 1993. Johnson had been called to the program site by his supervisors because several children had skipped school and had generally misbehaved. Johnson's supervisors instructed him to hold additional group sessions with the children. He disagreed with this plan and, without authorization, instituted his own plan instead and left the premises for the day. Johnson admits that the following day he hung up on a supervisor during a telephone dispute.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

## LEGAL STANDARD FOR TITLE VII AND § 1981 CLAIMS

Johnson's claims arise under both Title VII and 42 U.S.C. § 1981. The legal elements of each of these causes of action are the same. *O'Brien v. City of Philadelphia*, 837 F.Supp. 692, 699 (E.D.Pa.1993). For ease of discussion, we will do as the parties did and analyze Johnson's claims under Title VII law and caselaw. Title VII's § 2000e–2(a)(1) states:

> It shall be an unlawful employment practice for an employer—to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

A plaintiff can show a Title VII violation under either a disparate impact or disparate treatment theory. *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir.1990).

Johnson's claim is one of disparate treatment. He can succeed on this theory if he can prove, by a preponderance of the evidence, a prima facie case of discrimination. *Id.* Once this is done, the burden of production switches to the defendant to assert legitimate, nondiscriminatory reasons for the allegedly discriminatory actions. *Id.* Upon that showing, the burden of production

switches back to the plaintiff to rebut, by a preponderance of the evidence, the defendant's reasons.[1] *Id.* This can be done either by showing that each reason is a recent fabrication or that discrimination is more likely than not a motivating or determinative cause for the actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637–38 (3d Cir.1993).

For the purposes of this Summary Judgment Motion, RHD does not dispute that Johnson has made out a prima facie case of race discrimination.

### DEFENDANT'S REBUTTAL CASE

■ Because a prima facie case is conceded for the purposes of this Motion, the burden of production is on RHD to assert legitimate, non-discriminatory reasons for the termination. *Metal Serv.,* 892 F.2d at 347. RHD asserts that Johnson refused to follow direct instructions from his supervisors, was insubordinate and generally worked poorly with his supervisors.

To support these proffered reasons, RHD supplies, among other things, Johnson's deposition transcript.[2] In his deposition, Johnson admitted refusing to follow direct instructions and assignments. *Johnson Dep.* at 179, 184–85. He acknowledged that he believed, and made known to others, that he was more capable and competent than his supervisors and he admitted hanging up the telephone on a supervisor. *Id.* at 165–77, 181. This evidence is sufficient to show legitimate, nondiscriminatory reasons for firing Johnson, and serves to rebut his prima facie case.[3]

### PLAINTIFF'S REBUTTAL CASE

■ RHD's rebuttal of the prima facie case serves to return the burden of production to Johnson to show that RHD's reasons are merely a pretext for discrimination. This is a difficult burden to carry. *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994). At the summary judgment stage, though, a plaintiff can proceed by producing evidence that either (1) makes us disbelieve the defendant's proffered reasons, or (2) indicates that discrimination was more likely than not a motivating or determinative cause of the termination, possibly by showing such implausibilities and inconsistencies that make the proffered reasons unbelievable.

■ A plaintiff "need not prove at th[e summary judgment] stage that the employer's purported reasons for its actions was false, but the plaintiff must criticize it effectively enough so as to raise a doubt as to whether it was the true reason for the action." *Solt v. Alpo Pet Foods, Inc.,* 837 F.Supp. 681, 684 (E.D.Pa.1993) (citing *Naas v. Westinghouse Elec. Corp.,* 818 F.Supp. 874, 877 (W.D.Pa.1993)).

The Third Circuit has held that "factors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." *Josey,* 996 F.2d at 638–39. For example, summary judgment was inappropriate when an African American plaintiff showed that Caucasian employees were not required to submit medical records for absences or return travel advances in cash, yet he was. The Third Circuit held that this disparate employer treatment helped make a showing of pretext. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 799 (3d Cir.1990).

---

**1.** Johnson encourages us to adopt *Moisi v. College of Sequoias Community College District,* 25 Cal.Rptr.2d 165 (1993), *review denied, op. withdrawn,* 1994 Cal.Lexis 314 (Cal.1994), which held that summary judgment is precluded whenever a plaintiff alleges pretext because pretext is for the fact finder to determine. We decline to follow this California ruling, which conflicts with rulings of the Third Circuit. *See Josey,* 996 F.2d at 640.

**2.** Johnson argues that we should disregard his deposition testimony because Johnson merely "conveyed to the interrogator the reasons why *he was told* he was terminated." Brief at p. 5 (emphasis in original). Although this is true, in his deposition, Johnson also admitted that each of the events RHD claims they relied upon to terminate him did actually occur.

**3.** In addition, it appears that Johnson concedes that these are legitimate reasons for a termination. Plaintiff's Brief at p. 3.

■ Johnson offers almost no evidence to rebut RHD's showing. According to his brief, he intends to prove circumstantially that RHD's proffered reasons are pretextual through the use of statistics. Plaintiff's Brief at p. 4. He states:

> In an attempt to demonstrate the pretext, the plaintiff has requested various statistical records from defendant RHD. To date, the defendant has not responded to plaintiff's request for those statistics. The statistics sought would clearly indicate that defendant RHD has made it a practice to discriminate against black employees. The statistics would further illustrate RHD's exclusion of blacks from its managerial ranks.

*Id.* Johnson apparently wishes us to excuse him from the normal summary judgment standard and accept as evidence his assertion of what his evidence will be. This is not possible. Rule 56(c) states that an "adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

We note that since Johnson's Brief in Opposition to this Motion was filed, this Court ruled that it would not compel production of the statistics requested for the simple reason that they do not exist.[4] In the six weeks since this ruling, Johnson has not filed any supplemental brief or evidence that would cure his now-evident lack of factual support.

■ The only real evidence in Johnson's opposition to this Motion is three depositions.[5] He cites to his own deposition wherein he testified to "various examples of the racial tension that [he] endured at RHD, including but not limited to, second guessing of his clinical decisions, snickers from em-

ployees including Harvey Schwartz and intimidation by his superiors including Harvey Schwartz and Vickie Hayes" and his conclusion that those actions were racially motivated. Plaintiff's Brief at p. 6 (citations omitted).

In addition, he cites to Robert Arthur's deposition, where Arthur testified that Unit Directors are not members of RHD's management. Johnson also refers, but does not cite, to Sharon W. Kauffman's deposition where she allegedly testified that prior to 1993 there were only two African Americans in RHD's management, one of whom is no longer employed by RHD.[6]

We are not sure what the relevance of Arthur's testimony is. Johnson was not a Unit Director, so whether a Unit Director is a member of management would appear to be irrelevant. Kauffman's testimony, however, can arguably go to show that RHD discriminates against African Americans, evidenced by the fact that few African American people were in RHD management before 1993.

Even taking as true Johnson's testimony about racial tension, and Kauffman's testimony as to the numbers of minorities in RHD management, we do not find that the evidence even amounts to a "mere scintilla" sufficient to rebut RHD's proffered legitimate reasons. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511. His evidence does not indicate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" to make us disbelieve RHD's proffered reasons. *Fuentes,* 32 F.3d at 765. We find that Johnson has offered no evidence that would allow a reasonable jury to be able to rule that he has demonstrated by a prepon-

---

4. This ruling is found in a related case, *Hicks v. Arthur,* 159 F.R.D. 468 (E.D.Pa.1995) (Joyner, J.). Counsel in this case and *Hicks* are identical, and RHD is a defendant in each. Counsel has agreed that much of the discovery in the two cases shall be shared, so that our ruling on whether the statistics are available in *Hicks* applies equally to this case.

5. In addition to the depositions, Johnson has drafted an unsworn statement wherein he states that he believes that RHD's decision to terminate him is racially motivated. He also supplies two

unsworn letters from Theodora E. Cox, a former employee of RHD, that confirm that Johnson told her he believed that the RHD Administration was prejudiced and that she believes he was terminated because of his race. None of these unsworn documents can be relied upon, however, to oppose a summary judgment motion. Rule 56(c).

6. RHD argues that Kauffman did not so testify and points to deposition pages that would seem to support this assertion. Defendant's Reply Brief at p. 5.

derance of the evidence that his race was a determinative factor in his termination.

Because we find that Johnson has not met his burden of rebutting RHD's proffered legitimate reasons for firing him we GRANT Defendant's Motion for Summary Judgment.